**Dated: August 30, 2024**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 23-12344-JDL |
| Ryan David Bloom and | ) | Chapter 7 |
| Alisha Eileen Bloom, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Valliance Bank, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 24-1009-JDL |
| | ) | |
| Ryan David Bloom, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION TO STAY

### I. Introduction

Before the Court is Debtor/Defendant Ryan David Bloom's ("Debtor") motion seeking a stay of all unexpired deadlines, as well as the trial date of this adversary proceeding, pending the conclusion of federal criminal charges against him. The Plaintiff,

Valliance Bank ("Bank") opposes a stay and seeks to proceed with the deadlines established by the Court's March 6, 2024, Scheduling Order [Adv. Doc. 11], leading to the trial before this Court set for November 13, 2024, to establish as non-dischargeable tort claims for fraud and conversion against the Debtor pursuant to 11 U.S.C. §§ 523(a)(2) and (6).

On July 2, 2024, a federal court grand jury indictment was returned charging the Debtor with one count of bank fraud under 18 U.S.C. § 1344 which makes it a crime for anyone to knowingly execute a scheme and artifice in order to defraud a financial institution to obtain money or property using fraudulent representations.[1] Specifically, the indictment alleges that Debtor sold (assigned) to the Bank approximately $2.3 million in accounts receivable which Debtor knowingly and falsely represented to the Bank were valid and enforceable when, in fact, they were unenforceable because Debtor's company never completed or contracted for the work represented by the invoices.

To support the stay request, the Debtor argues allowing this case to proceed parallel to the criminal case would leave him unable to adequately defend the adversary proceeding while maintaining his Fifth Amendment privilege against self-incrimination

---

[1] *United States of America v. Ryan Bloom*, Case No. CR.24- 266-J, United States District Court for the Western District of Oklahoma.

This Court is entitled to take judicial notice of both its own docket sheets and other state or federal court docket sheets. *United States v. Ahidley*, 486 F.3d 1184,1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."). *Adams v. Watts,* 2009 WL 5101759 (W.D. OK. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie,* 2006 WL 2792671 (W.D. OK. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts).

under the United States Constitution.  As stated by one court;

> The ultimate question, therefore, is whether the court should ... avoid placing the defendants in the position of having to choose between risking a loss in their civil cases by invoking their Fifth Amendment rights, or risking conviction in their criminal cases by waiving their Fifth Amendment rights and testifying in the civil proceedings.

*Cruz v. County of Dupage,* 1997 WL 370194, at *1 (N.D. Ill. 1997); *see also Brock v. Tolkow,* 109 F.R.D. 116, 121 (E.D. N.Y. 1985) (when a litigant may have to choose between invoking a Fifth Amendment privilege in a civil case to avoid answering questions which could implicate him in a parallel criminal prosecution, such a stay is appropriate for consideration).  The Bank argues that it should not be forced to wait indefinitely for the criminal matter to conclude and that "[i]f this case is stayed, witnesses may become unavailable, witnesses' memories may fade, and the Debtor's assets that may be available to satisfy a judgment may be dissipated." [Adv. Doc. 17, p. 4].

The pleadings before the Court for a determination of the issue are: (1) *Defendant's Motion to Stay Proceedings* [Adv. Doc. 16]; and (2) *Plaintiff Valiance Bank's Objection to Defendant's Motion to Stay Proceedings* [Adv. Doc. 17].

### II. Jurisdiction

The United States District Court for the Western District of Oklahoma has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. § 1334(b).  This Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District Court's General Order of Reference contained in Local Rule LCvR 81.4.  This adversary proceeding is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as

to the dischargeability of particular debts).  Furthermore, pursuant to Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure, the parties have consented to the jurisdiction of this Court and its ability to enter final orders and judgments.  This adversary proceeding arises under the Debtor's Chapter 7 case pending in this District and venue is proper pursuant to 28 U.S.C. § 1409(a).

### III. Applicable Law

The Supreme Court has long recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Landis v. North American Company*, 299 U.S. 248, 254–55, 57 S.Ct. 163 (1936).  "Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action...." *United States v. Kordel,* 397 U.S. 1, 12, n. 27, 90 S.Ct. 763 (1970) (collecting cases).

However, "[n]othing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter." *Nosik v. Singe*, 40 F.3d 592, 596 (2nd Cir. 1994).  Indeed, "'[a] stay of [a] civil case' to permit conclusion of a related criminal prosecution has been characterized as 'an extraordinary remedy.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2nd Cir. 2012).  When determining whether to stay an action, the court must exercise its judgment and weigh competing interests to maintain an even balance between the parties. *Id.* at 97.  The party seeking a stay bears the burden

of establishing its need and, absent a showing of undue prejudice or interference with the defendant's constitutional rights, a stay should not enter. *Id.* When "evaluating whether the 'interests of justice' favor such a stay, courts have generally been concerned about the extent to which continuing the civil proceeding would unduly burden a defendant's exercise of his rights under the Fifth Amendment ...." *Id.* Because the Fifth Amendment does not forbid drawing an adverse inference against a party to a civil action when they refuse to testify, "[a] defendant in a civil proceeding who invokes the Fifth Amendment as a result of an overlapping criminal investigation or proceeding 'risk[s] the adverse inference arising from [his or her] assertion of the privilege.'" *Id.* at 97-98. On the other hand, a civil defendant who does not assert their Fifth Amendment privilege may find their testimony in the civil case brought to bear in the criminal case. *Id.* at 98.

A motion for a stay entails a case-by-case, fact-specific inquiry, with courts citing some combination of six factors in determining whether to enter a civil stay while a criminal case is proceeding:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case;
>
> 2) the status of the case, including whether the defendant has been indicted;
>
> 3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to plaintiff caused by the delay;
>
> 4) the private interests of and burden on the defendant;
>
> 5) the interests of the courts; and
>
> 6) the public interest.

*Urrutia v. Montoya,* 2016 WL 9777168 (D. N.M. 2016); *Hilda M. v. Brown*, 2010 WL 5313755, at *3 (D. Colo. 2010). These factors are meant to be employed as a guide to aid the court in determining the proper course of action but are not considered by courts to state a bright-line rule. *Louis Vuitton Malletier S.A.*, 676 F.3d at 99.

### A. The Extent to which the Issues in the Criminal Case Directly Overlap With Those Presented in the Civil Case

"[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Securities and Exchange Commission v. CKB168 Holdings, Ltd.*, 2016 WL 11472222, at *2 (E.D. N.Y. 2016) (quoting *Securities and Exchange Commission v. Dresser Industries., Inc*., 628 F.2d 1368, 1375 - 76 (D.C. Cir. 1980)). "Parallel cases substantially overlap when they 'arise from the same facts and involve nearly identical issues.'" *Capak v. Epps*, 2018 WL 6726553, at *3 (S.D. N.Y. 2018).

The Bank argues that the issues involved in the criminal case and the non-dischargeability adversary are not "identical" because the single count criminal indictment only pertains to the Debtor's alleged submission of false invoices to the Bank in order to obtain funding while the adversary proceeding asserts as grounds for non-dischargeability both the submission of false invoices and, in addition thereto, the Debtor's alleged sale or other disposition of the Bank's collateral without remitting the proceeds thereof to the Bank (conversion). But the test for determining whether a stay should be granted does not require that the issues in the criminal and civil cases be "identical" but only that they "overlap." In its objection the Bank states that "the extent of overlap between the issues

involved in this adversary proceeding and those in the criminal proceeding is unknown" but acknowledges "that there is partial overlap between these (civil and criminal) matters." [Adv. Doc. 17, p. 3].

### B. The Status of the Case

When weighing the status of the case, courts look to "whether a prosecution is likely and imminent as opposed to a remote or purely hypothetical possibility." *Capak v. Epps*, 2018 WL 6726553, at *2 (S.D. N.Y. 2018). "A stay of a civil case is most appropriate where a party to the civil case already has been indicted for the same conduct." *Securities and Exchange Commission v. LaGuardia*, 435 F.Supp.3d 616, 621 (S.D. N.Y. 2020). As stated by one court within the Tenth Circuit:

> The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned. The potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act.

*Hilda M.*, 2010 WL 5313755, at *4 (quoting *Dresser*, 628 F.2d at 1375-76). Here, the Debtor has already been indicted, with a current criminal trial date of November 6, 2024.

### C. The Private Interests of a Plaintiff in Proceeding Expeditiously Weighed Against the Prejudice to the Plaintiff Caused by the Delay

Although the plaintiff undoubtedly has an interest in proceeding expeditiously, courts have held that, where a plaintiff has not identified an interest in immediately continuing the case, the plaintiff has failed to show an interest that would outweigh a defendant's interest in preserving their Fifth Amendment right. *See, Scottsdale Insurance Co. v. Above Call Security & Investigations, Inc.*, 2022 WL 125801, at *5 (E.D. N.Y. 2022). The Court is

7

mindful "a stay will result in inconvenience and delay to plaintiffs," however, consideration of a defendant's Fifth Amendment rights takes precedence. *Parker v. Dawson,* 2007 WL 2462677, at *5 (E.D. N.Y. 2007).

### D. The Private Interests of and Burden on the Defendant

Where a defendant is forced to choose between utilizing his Fifth Amendment privilege against self-incrimination in a criminal case and defending himself in a civil case, the risk of prejudice is high*. Numismatic Guaranty Corp. of America v. City Gold USA, Inc.,* 2018 WL 11468249, at *2 (S.D. N.Y. 2018). "There can be little doubt that an indicted defendant ordinarily faces a very substantial risk of self-incrimination if he chooses to defend against civil charges. Conversely, an adverse inference may be drawn if he chooses instead to invoke his Fifth Amendment privilege." *In re Worldcom, Inc. Securities Litigation*., 2002 WL 31729501, at *7 (S.D. N.Y. 2002). Forcing a defendant to defend in a civil case may result in the defendant revealing "the basis of [his] criminal defense in advance of trial." *Numismatic Guaranty Corp. of America,* 2018 WL 11468249, at *2.

### E. The Interest of the Courts

The Court's duty to conduct its judicial business so that cases are resolved as quickly and as cost-effectively as possible, and its intention to inspire the public's confidence in the court's process and decisions, require the court to consider judicial efficiency. "Staying this action could streamline the proceedings, since upon culmination of the criminal case, collateral estoppel could prevent re-litigation of issues adjudicated in the criminal matter." *Securities & Exchange Commission,* 435 F.Supp.3d at 622. "As many courts in similar circumstances have noted, '[t]he Criminal Case will resolve issues of fact

8

common to the civil case and may reduce the number of issues to be decided in subsequent proceedings in this case.'" *Securities & Exchange Commission v. Abraaj Investment Management Ltd.,* 2019 WL 6498282, at *3 (S.D. N.Y. 2019) (collecting cases). "A stay will conserve judicial resources, avoid prejudice to Defendants by having to litigate the same issues pending the appeal's outcome, avoid possibly inconsistent results, and not unduly delay resolution of the case." *Tyus v. Semple*, 2020 WL 1083603, at *4 (D. Conn. 2020).

### F. The Public Interest

"The Government and the public have an interest in ensuring that civil discovery is not used 'to circumvent limitations on discovery in criminal cases.'" *Securities & Exchange. Commission* 435 F.Supp.3d at 622.

## IV. Discussion

The first factor the court considers is whether the subject of the criminal case overlaps with the subject of this adversary proceeding. Some courts view this as the strongest factor. *See, e.g.*, *Securities & Exchange Commission v. CKB168 Holdings, Ltd.*, 2016 WL 11472222, at *2 (E.D. N.Y. 2016). Here, the parties agree the allegations of the adversary complaint partially overlap with the charges in the criminal case. This factor weighs in favor of granting a stay.

The second factor, the status of the criminal case, also weighs in favor of granting a stay. The Defendant has already been charged by the federal government, and the criminal case is pending in federal court with the trial scheduled for November 6, 2024. This is not a situation in which the criminal prosecution is only a possibility or where the

9

criminal case, if filed, is not possible to state with certainty when the trial of the same may take place. Here, the criminal case is already pending with a trial date set only three months in the future.

The third and fourth factors, the interests and prejudices to the parties, also support a conclusion that granting a stay is prudent at this time. Although the Court recognizes a stay of this adversary proceeding may result in some inconvenience and delay for the Plaintiff, the Court believes any inconvenience and delay to be minor since the stay considered by the Court will only be approximately three months as the criminal case is set on the District Court's jury trial docket commencing on November 6, 2024, only seven days before the current trial date in the adversary. Importantly, the Plaintiff's interest in proceeding without delay does not outweigh the defendant's interest in preserving his Fifth Amendment right, at least at this stage. *See, e.g.*, *Scottsdale Ins. Co. v. Above Call Sec. & Investigations, Inc.,* 2022 WL 125801, at *5. As noted, the stay the Court imposes now will be limited in duration, subject to review and possible extension.

The Debtor's criminal case arises from the identical conduct alleged in the adversary complaint. To allow both proceedings to continue parallel to each other would burden the defendant's Fifth Amendment privilege. If the adversary proceeding were stayed, greater judicial efficiency, the fifth factor, may result. That judicial efficiency may, for example, include the doctrine of collateral estoppel which may dispose of several major issues in this case after the conclusion of the criminal case and leave few issues to be tried in the adversary proceeding.

10

## V. Conclusion

Weighing all of the relevant factors, the Court concludes a stay of this adversary proceeding should be granted for a limited time of no more than ninety (90) days, subject to consideration of a further stay.

For the foregoing reasons, the Debtor's *Motion to Stay Proceedings* will be granted for a limited time period. Accordingly,

**IT IS HEREBY ORDERED** that the Debtor's *Motion to Stay Proceedings* [Adv. Doc. 16] is **Granted,** and all deadlines established in the Court's Scheduling Order of March 6, 2024, not yet expired are stayed through November 30, 2024;

**IT IS FURTHER ORDERED** that the bankruptcy trial currently scheduled for November 13, 2024, is stricken to be reset by order of the Court; and

**IT IS FURTHER ORDERED** that on or before November 30, 2024, the parties are to file a joint statement concerning the status of the federal criminal proceeding against Debtor.

# # #